Good morning, this is 161756, In Re Affinity Labs of Texas. Mr. Schultz, whenever you're ready. Good morning, Your Honors. The issues that I'd like to discuss today related to this appeal are two issues. The first is whether 317B should have applied for the entire proceeding, and whether the issuance of a re-exam certificate where the priority issue was resolved required this inter-parties re-exam to be terminated. So turning to the first issue related to 317B. 317B statute, the issue before the court is simply whether the term such issues is limited to a claim-by-claim analysis. A review of the plain and unambiguous language of the statute demonstrates that it is not limited by a claim-by-claim analysis. Well, the provision talks, says in several portions, talks about any patent claim in suit, right? It says any patent claim in suit, then it goes on to say of any such patent claim. So why shouldn't issues relate back to the patent claims themselves? Because while the statute does talk about any patent claim, the particular definition of issues is not limited to that. Well, how do we know that? What do you want to point me to? Sure, if you look at the statute where it says on the basis of issues which that party or its privities raised or could have raised in such civil action or inter-parties re-examination proceeding. That's the definition of issues. Now, what the PTO is asking this court to do is take language that precedes that definition and somehow then incorporate that into the definition. There's no statutory interpretation authority for such a reading of the statute. Can you explain to me how your reading would make sense of the statute? I don't mean whether or not you have a plain meaning argument. I understand your argument. But how would it make sense to have a scenario in where you could not continue an issue, but you could re-raise it, basically? You've created a real disparity in how this statute is going to apply whether you're maintaining a re-exam or initiating a new one. Tell me how that makes sense. Yes, Your Honor. And that's exactly what Congress intended and did. There were two scenarios that this statute was meant to apply estoppel to. And the estoppel that applies in each scenario is different. In the one scenario, it says you cannot initiate, an accused infringer cannot initiate an inter-party re-exam proceeding based on any claim it lost at the district court, on any issues it could have raised or did raise at the district court. A very narrow scope. But then it goes on to then have a second scenario where it says you cannot maintain an inter-party re-exam that was co-pending with the litigation on any issues that you raised or could have raised at the district court and you had lost them. So they could, just to be clear, dismiss or withdraw the pending re-examination because the scope of estoppel there would be broader if it's pending and then just refile a brand new re-examination on the different claims and be perfectly fine. Correct. How does that make sense? Why does that make sense? Because what Congress is attempting to do here is if you, as the accused infringer, decide to fight validity in both forms, at the district court and an inter-party re-exam, Congress would incentivize the party to bring their best arguments forward in both forms. And then it is a race to who finishes first. And then if the district court finishes first, that inter-party re-exam needed to be terminated in order to preserve the resources of the patent office because the issues that Congress probably assumed you raised, the issues in both proceedings, and then once a determination had been made, in order to conserve resources and to effectuate the purpose of this provision in the estoppel, which is shown in the legislative history, to prevent harassment of the patent owner. The patent owner is one. But your view is the patent owner would be allowed to be harassed because they could file a new re-exam. And how does that serve the efficiency that you're talking about? It's more efficient to kick a pending suit out and have the patentee file it brand new than it is to just continue the pending suit? I don't understand. So I guess I'm not sure why the patent owner would dismiss a suit or not. What's happening here is the accused infringer, who has lost at district court, there was a race. They lost. You save resources by then terminating that inner party's re-exam proceeding. And then if the accused infringer, for some reason, needed to challenge other claims that had not been determined, there still is an option. But that current pending re-exam should be terminated because this purpose of the estoppel is to prevent harassment of the patent owner. The patent owner was fighting the fight in two forms. Yeah, and as to the claims which it was resolved in, it makes total sense that that would constitute harassment of the patentee. As you're suggesting, it shouldn't go forward. But as to other claims which have not been adjudicated in the district court, it doesn't – your argument – I can't reconcile the difference in approach that you think the statute mandates between suits that are maintained and suits that are initiated. Because under your logic, you have to accept the fact that the infringer who lost in the district court under your reading of the statute is perfectly free to then bring the claims that weren't decided, even on the same issues, in a new re-exam. Right, well, the problem with the analysis, if you're going to go on a claim-by-claim analysis, is demonstrated in this case here. And I'll point you to it. Claim three was adjudicated at district court. No dispute there. Claim three is a dependent claim from claim one. Claim three simply adds a limitation to claim one. It doesn't change or alter the limitations that are at issue for the priority issue here. But now what we have is a situation where there are inconsistent results. We've got claim one where the patent office has said it's not entitled to the March 2000 priority date. And we've got claim three, a dependent claim of that very claim that incorporates all those limitations, now has a priority date of March 2000. That type of inconsistency is caused by doing a claim-by-claim analysis. Had the patent office done its job correctly under the statute and terminated that inter-party re-exam that was being co-pending at the time, we would not have this inconsistency. Yeah, we could, because they could just bring a new re-exam with that claim. And then they could challenge it. But I'm not sure they could do that, because under claim one, the issue would be the same. No, but it says here, you told me I should read the statute that initiating a re-exam, the estoppel only applies to such patent claims as were adjudicated. So you've told me the statute expressly addresses this. When it uses that such claim language, it limits. You were only estopped from bringing a new re-exam on the exact same claims that were litigated, not just on the issues, but on the same claims and the same issues. And so perhaps this 317B wouldn't necessarily preclude that re-exam petition. But I would submit to the court that that petitioner had quite the uphill battle in establishing that there's a substantial new question of patentability on priority when the issue on a dependent claim had already been decided. The PTO says, or there's an argument, I should say, made by the director, that they should be entitled to Chevron or our deference on this point. That if there's at least possibly, if there is ambiguity or if there is a gap to be filled, that they have the authority to fill that gap. Is that right? Is that your view, that they're entitled to Chevron and or our deference? In this case, I don't believe they're entitled to any deference. Our position is that the statute is clear on its face what Congress had intended. If the statute is not clear on its face, if I think there is ambiguity, is the PTO the adjudicative body authorized by Congress to fill the gaps? Under Chevron, then, they would be owed some deference. But even under some deference, their reading of the statute really results in more inconsistent scenarios, as I've highlighted, than reading it the way that the statute is expressly written here, that there are two scenarios with two different scopes of estoppel. And I would just lastly point before I move on on this issue, if Congress had intended the scope of estoppel to be the same in both scenarios, it wouldn't have written the statute this way. You have to give credence to the format and structure of the statute. This is a whole separate clause. There's a comma and then and, and then describes the scenario. What the Patent Office is doing is saying it's the same estoppel provision in both scenarios. That's not the language of the statute. Congress specifically said here's the estoppel for new petitions and here's the ones for currently pending ones. The other issue I would like to discuss with the court relates to whether another reason why this proceeding should have been terminated. At the same time this inter-party re-exam proceeding was pending, there was a concurrent ex-parte re-exam on the same patent, 228 patent and the same claims. And in the 228, in the re, in the, sorry, in the ex-parte re-exam, the issue of priority as to all these claims was raised. And in that proceeding, the examiner found that all the claims were entitled to a March 2000 priority date and issued a re-exam certificate. Well that examiner found they were entitled to it because he or she, if I remember right, thought they were bound by an earlier PTAB decision not involving BW. I don't remember who it involved. But isn't that right? Like the examiner actually originally rejected in that re-exam the claim, but then interpreted a different PTAB decision to indicate that there was written description support. Is that right? That's correct. That is what happened. So here's my question to you, which is under what circumstance, or is your argument that somehow under the APA, because you cite no authority for this estoppel, right? It's not judicial estoppel, a statement made by one person that they succeeded on. It's not prosecution history estoppel. It's not estoppel based on 317. You cite no legal support whatsoever for this notion of estoppel you have. And the estoppel almost seems to be an estoppel you intend to apply against the agency, not even an estoppel against the party. It's almost like you're arguing the agency cannot reach two completely contrary results on the same set of facts, which, hey, by the way, I'm sympathetic, but it's a fact question. And so every once in a while we do get fact findings by two different bodies, like two different juries that look at the exact same facts and come out the opposite way, and we have to review those for substantial evidence. So I'm kind of wondering where is the genesis of this estoppel that you're arguing that you are entitled to, and is it really true? I mean, do I have to hold the PTAB is never permitted two different groups of board judges to come to different conclusions, that they are stopped? They are somehow stopped from doing that. See my problem? Yep. Again, I will do my best to address the question. So the authority for it starts with N. Ray Swanson, where this court had said a second examination cannot decide issues that had already been decided in a preceding examination. The PTO makes no attempt to distinguish that ruling in N. Ray Swanson. And where this comes from is in Section 303A, there has to be a substantial new question of patentability, and that has to be maintained until the board makes a decision. Well, before the board had made its decision in this inter-party re-exam, the issue of priority had been decided by the examiner on these claims in this patent, and by having decided that these claims were entitled to a March 2000 priority date, it removed the references in the combination to no longer be prior art, such that those reference combinations could no longer establish a substantial new question of patentability. And just as the legislative history says, the reason why we have a substantial new question of patentability is to prevent the patent owner from having to participate in re-examinations that don't have a question of patentability in them. And so that is the basis by which, when this examiner found on these claims that they were entitled to a March 2000 priority date, the issue had been decided by the office on this very issue. And so once that had done, it had removed the substantial new question of patentability in the inter-party re-exam, and the re-exam should have been terminated because it lacked the substantial new question of patentability. You're into your rebuttal. Do you want to save that and let's hear from the other side? I will save the rest until there are further questions. Good morning. May it please the Court. Just starting with the termination provision 317B, I think Your Honor understands the point. Affinity's position on 317B just doesn't make any sense. It doesn't make sense to have a different rule for whether an inter-party re-exam is terminated based on whether it's filed before a final district court decision or after a final district court decision. And the purpose of the 317B is to prevent harassment of the patent donor. And in this case, there's been no harassment. The district court only made a final determination of patentability with regard to claims 3, 22, and 28. And so the PTO correctly terminated the inter-party re-examination with respect to those claims and their dependent claims. To the extent that there's a fair distinction to be drawn by using terms like procedural rulemaking and substantive rulemaking, does the office view this as substantive rulemaking or as procedural rulemaking? The rules that you're asking for deference on here. Well, they've got a regulation, 1.97B. So the office believes they should get some deference, some Chevron deference. And they also have an NPEP rule, which has been in effect since 2005. That's the four-factor test. That's the basis for getting some hour deference. I think that—so where is the agency authorized to regulate in this space? I mean, in IPRs, for example, Congress gave the PTO broad, substantive, and procedural rulemaking authority. There's no question about that. It's really unprecedented in terms of Congress's delegation to the PTO. IPR is broad, substantive, and procedural rulemaking. So the agency was free to fill gaps in IPRs. Is there a provision that you can point me to that similarly applies in the re-examination context, where the agency was expressly delegated gap-filling authority? I believe the PTO is the advisor to the president on intellectual property and patent matters. So I don't know if there's a specific rule authorizing the PTO to interpret or create rules for inter parte re-exam. Do you not know anything about this issue? You might be better off just saying I'm completely unprepared on this issue because what you just said made no sense. Okay, I may not be able to answer that question for you. But one of the issues in this case, the director has argued that she is entitled to Chevron and hour deference. And I'm trying to understand what are the contours of when Chevron and hour deference are warranted. And in particular, you said, well, she gets Chevron deference because she enacted this regulation. And I'm kind of wondering, is that true if she has no authority to enact this regulation, if this regulation was enacted but she had no substantive rule-making authority? I'm wondering, does an agency get Chevron deference if Congress hasn't authorized them to fill gaps? I don't think I'm prepared to answer that question, and I'd rather not try to answer it for you. But they have implemented these rules in MPEP. They have regulation. It's a longstanding rule that dates back to 2005. And even without any deference at all, I think it's just kind of a common-sense application. It just doesn't make any sense to have this rule where you treat earlier filed and later filed inter-party re-exams differently. It would be totally inefficient, and it just doesn't make any sense. Those are all the reasons why the rule shouldn't be that way. What response do you have, though, to the plain language argument that your opponent made? Yeah, sure. I think if you look at the plain language of 317B, it talks about applying termination when the party has not sustained its burden of proving the invalidity of any patent claim in suit for later filed re-examinations. And then for maintaining existing re-examinations, it talks about such issues. And I think the only fair interpretation of such issues is it's referring to the language any such patent claim on the basis of such issues. I think you have to interpret that such issues as referring back to the claim-by-claim analysis on the basis of such issues. Now, if there were a provision sandwiched in between that dealt with new re-exams, then that argument just may be much more compelling. But the provision in between, which deals with whether you can initiate re-exams, institute new re-exams, instead says such patent claims on the basis of such issues. So was that just total superfluousness by Congress there? Because if your view is the interpretation of on the basis of such issues should refer back to the earlier reference to any patent claim in suit in the triggering provision, then why in the world would Congress have felt the need to include the such patent claims language in the institution part of this provision? Yeah. I mean, I think they certainly could have... So you think it's just superfluous? I think they could have used different words here. I think they used such issues. They could have actually just repeated the whole portion about any patent claim and just the same way they did in the first clause, repeated that in the second clause and made it clear that it applies to... But the fact that they didn't repeat it in the second clause, different words in the same statute are presumed to have different meanings. They didn't repeat it. So what do I do with that? Well, I think they're using the word such issues. You just have to look back and interpret that as referring to a claim-by-claim basis on such issues. That's the only logical interpretation of the statute. What do you want me to refer back to for that interpretation? So in the second clause, it refers to termination on the basis of such issues may not thereafter be maintained by the office. Such issues is going to refer back to where it's talking about that party may not thereafter request an inter-party re-examine on any such patent claim on the basis of issues which that party raised or could have raised. So I think you have to read such issues as referring back to that entire clause and not just the issues but also any such patent claim on the basis of issues which that party raised or could have raised. That's certainly a permissible interpretation to the extent there's any ambiguity in the statute. Well, I'm not sure you have to convince me it's permissible because you haven't convinced me yet that Chevron applies. So I think you have to convince me that it's the reasonable interpretation. Yeah, so I think it is the reasonable interpretation because Affinity's interpretation, as you've already pointed out, just doesn't make a lot of sense. I mean, the idea is to prevent harassment here, but how are we preventing harassment if the same party could, if we terminate their entire re-examination that's existing, they could just subsequently file a new inter-party re-examination. That just doesn't make any sense. There's no efficiency there. It's just kind of illogical on its face. I don't see any basis for it. I don't see any intent by Congress to have a different rule for earlier and later filed inter-party re-exams. So you want to turn to the second estoppel issue? Yeah, the 303 issue. So this was, I think as you pointed out, there's really no legal basis that they cite to in the law. And they actually have it backwards. A decision by the PTO that something, a patent is invalid or unpatentable can actually trump a district court decision. So I think they have it a little bit backwards there. There's also a due process issue. Just because one party may have failed to meet their burden of proving infallibility, it doesn't prevent any new party from challenging the validity of a patent. So I think their argument that somehow that the subsequent decision by Examiner LaRose or a district court decision or a board decision in a different case, a different patent that may be similar, somehow conclusively determines that there's no new question of patentability. I think herein is the crux of what's tough to swallow about this. The board found there was, in fact, written description support in that paragraph on column whatever for the soft buttons in a different case. In a different case. Involving a different defendant. But involving, not defendant, but a petitioner or whatever. But involving, of course, the same patent holder. So it was a different party. It was also a different patent. And it actually had different claims. When you say it was a different patent, it is the exact same specification. Identical word for word. And when you say it had different claims, nobody has argued that there was any meaningful difference between the claims that I'm aware of. Am I missing something? Did someone say there was some meaningful difference between the claim language that could have resulted in a different outcome? Well, I'll just point out that the claims in the 926 patent, that's the other board decision we're talking about. It refers to a selectable representation, which could be present on a recipient device or a different device. As opposed to here, we have soft buttons. So soft buttons, I think, are something you can actually, it's a button you can touch where a selectable representation could be something different where you could use maybe a remote control to hover over something. There could be some difference. I don't think the parties have actually gone into detail how that could be different. But I think there are differences. Okay. Suppose, though, forget about the facts of this case. Suppose that it was the exact same limitation, exact same patent. Okay? Because I don't think actually being a different patent matters if it's the same limitation, same family continuation. But suppose that it's exactly the same patent. The board looks at it and says, yes, there's written description support for this right here in this paragraph. Can a subsequent re-examination or IPR or whatever come along and can a different composition of board judges reach the opposite conclusion? Would that be something the office is permitted to do? Yes, that can definitely happen. The board decision in this other patent, this 926 patent, it's not a precedential decision. The panel, the board in this case, is certainly not bound by that decision. They can look at it, but they're not bound by it at all. They're not bound by the district court decision or Examiner LaRose's subsequent decision. They can look at the record and make a determination on their own. And it's not the best result, but it's not uncommon. Even if the record is identical between the two, one panel of board judges can reach one conclusion and a different panel of board judges can reach the exact opposite conclusion? Yes, yes. That's true. The question is whether the interpretation is reasonable and whether it's supported by substantial evidence. And in this case, I'm happy to delve into the 228 patent spec to show you how it's a reasonable interpretation. It's supported by substantial evidence. You can do that, but he didn't do it in his opening, so I don't know why you'd want to open the door and rebuttal him. But you're free to do whatever you want. I may leave that to the next panel. If you'd like me to, I'm more than happy to do that. To answer your question, the board here is not bound in any way by that other board decision or the district court or the examiner's decision. You just look at the record in this case and determine whether there's substantial evidence to support the board's decision, and I think here there is. Does it matter that this is a question of fact? Meaning, if it had been a question of law that the board had decided in the other case, would that make a difference? Or is it different composition of board judges permitted to decide an identical question of law differently? Well, I think for a question of fact, it's just whether there's substantial evidence. If it was a question of law and it's a non-presidential decision like that board decision was, I think they could. They still could. They still could. So, I mean, I don't want to open the door on the priority date issue if you'd rather not have me talk about that, but I'm certainly happy to delve into the 228 patent. I'll do it just very briefly. I don't think it'll take very long. If you look at the 228 patent, the key passage is... Well, let's look at column 9. I'm sorry. Column 11, lines 10 through 26 actually shows the embodiment where it has a portable electronic device that communicates to a car automobile system. And if you read this paragraph closely, it's clear that the only device that has the graphical user interface is the portable device. And that's supported if you look at the figures. Figure 4 on A63, this shows the radio dial, which is the graphical user interface with the soft buttons. That's on the portable device. And then if you look at figure 9, figure 9 on A68, this is the figure that shows the automobile audio system. And you can see here it just has two buttons. It's tuned to 98.1. It has a CD player. There's no graphical user interface there. So I think based on that disclosure and the spec and these figures, it's clear that only the portable device has the GUI interface. But you don't have to prove there's no graphical user interface there, right? You just have to prove there's substantial evidence for the board's fact-finding to that extent. So even if I thought it was ambiguous, or even if I might have decided the other way, or even if a different composition of board judges would have, in fact, decided it the other way and did decide it the other way, arguably, none of that is relevant. You just have to prove to me that this particular decision is supported by substantial evidence. Exactly. So if there's no further questions, I see my time is up. Two very quick points. One on the 317B. It's clear that Congress intended to funnel any new IPR petitions back into the decision of if there's a substantial new question of patentability. So it's not a waste of resources to terminate a currently pending one if the accused infringer wants to bring a new petition in. Then they have to establish that there's a substantial new question of patentability as to those claims that were not adjudicated at trial. So by doing that, that's the mechanism that would then potentially preclude continued harassment by the patent owner because more than likely that accused infringer would have an uphill battle to establish a substantial new question on related claims that had already lost at the district court. On the 303 issue, it is troubling to me that the Patent Office is taking the position that it is totally fine for inconsistent decisions to be made related to the same family on issues that are common across all continuation applications. That cannot be the desired result that we want out of the agency. And in here, I just want to be clear. We're not relying on the district court decision as some sort of estoppel. The Patent Office's reliance on Frenius is just not true. What we are relying on is in the ex parte re-exam on this patent, the issue was decided. And the basic principles of estoppel apply. The Patent Office was a party to both proceedings. The issue was the same. They raised the issue, and their arguments were rejected, and a decision was made on priority that these are entitled to March 2000 priority. Therefore, even just under basic principles of estoppel, they were bound by a decision. And again, I did not hear counsel from the Patent Office make any attempt to distinguish this court's ruling in N. Ray Swanson, where this court specifically said a second examination cannot adjudicate issues that were done in the first examination. That's exactly what happened here. And these claims, the issue on priority had been decided. This proceeding should have been terminated once the re-exam certificate had been issued. Thank you. We thank both sides and the case is submitted.